## Lee Clay Products Co. v. Stamper et al.

(Decided May 25, 1937.)

E. HOGGE and JAMES C. CLAY for appellant.

WAUGH & HOWERTON for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

This is an appeal from a judgment rendered on the 17th day of March, 1937, by the Rowan circuit court affirming an award of compensation made by the Workmen's Compensation Board. It appears from the record that both parties accepted the provisions of the Workmen's Compensation Act (Ky. St. sect. 4880 et seq.). The only question in controversy is whether Estil Stamper came to his death while engaged in the performance of his duties as a servant of the Lee Clay Products Company, by suffocation, or whether he came to his death from heart trouble alone.

It is conceded that he was in the employ of this company at the time; that Gladys Stamper, his wife, and Robert Stamper, his son, were both dependent upon him for their support; and that appellant at the time was engaged in the business of manufacturing clay products in the city of Morehead, Rowan county, Ky.

The process of manufacturing engaged in by appellant consisted of an equipment in part as follows: A huge steel bin about 45 feet in length, 9 feet in height, and 13 feet across the top tapering to about 3 feet at the bottom, which was supported by steel columns. On its top were large sifting screens about 8 feet long and 4 feet wide, commonly known as "electric vibrating screens." Through these screens, that were continuously shifting, clay that was used in manufacturing the products of the company flowed for the purpose of reducing the lumps of clay to a size that the clay would pass through these screens. It was necessary that the shifting of the screens be had. The clay, after being shifted, was supposed to pass through chutes at the bottom of the bin into pans beneath. These chutes were about 14 inches square. It was the business of Stamper to see that the clay passed through these chutes. On the morning of the 15th of November, 1935, he was engaged in that task. The evidence is to the effect that he was not seen after 9 o'clock, but was supposed to be engaged in the business that he was employed to do. However, about 12 o'clock, some inquiry was made about him, and he could not be found. Upon investigation his dead body was found in this bin covered with clay. No one knew positively how he came to his death. Appellant claims that his death was caused by a heart attack and not from being smothered or suffocated by

the clay. It was the judgment of the Workmen's Compensation Board that his death was the result of suffocation and not from heart trouble. The circuit court affirmed that judgment.

Appellees had the burden of proving that Stamper came to his death as the result of an accident arising out of and in the course of his employment, but they were not required to produce direct evidence of that fact. "If evidence is produced which will reasonably sustain an inference or raise a presumption in support thereof, it is sufficient." Codell Construction Company v. Neal et al., 258 Ky. 603. 80 S. W. (2d) 530, 532, and authorities cited therein.

The evidence is to the effect, when the plant is in operation, one man is employed always to operate this vibrating screen, and it is the duty of the man so employed to see that the clay flows through the bin, through the chutes, and into the mud pans. At times the clay after passing through the screen and into the bin becomes hardened, clogged, and packed in the chutes that lead to the mud pans. When this takes place, it is the duty of the operator to go into the bin and dislodge the clay by using a shovel or crowbar. When that is done, the whole mass of clay then caves in, as it pours out. The evidence was to the effect that the operator must be very quick or he will be caught in this resulting cave-in. On this occasion Stamper was employed as the screen operator and when found his dead body was at the bottom of the bin. The evidence showed that when his body was removed from the bin one foot was jammed down in the opening of the chute as far as it would go; that at the time there was about 3 feet of clay under his body and over 2 feet of clay on top of his body. The body was resting at about a forty-five degree angle with the knees bent backward. There was no discoloration or bruises on the body at all. Witnesses, who had worked for the company, stated "that they had been caught in a cave-in like this and always had much trouble in getting out; that the place was dangerous for one to work." It was also in evidence that the body was covered entirely by the clay; that he had his right hand above his head and near to a shovel which appellee insisted he had been using in removing the clogged clay. His cap was above the shovel and near to the surface of the clay. When found, he had

clay in his nostrils and throat until his throat was full. Appellant claims, as stated, that his death was the result of a heart attack. The only evidence offered to that effect was that of Dr. G. C. Nickell, who saw him after his death. He was his family physician. He examined the body and stated that because there was no discoloration or cyanosis to be seen, in his opinion, his death resulted from heart failure. However, he admits that he had never diagnosed his case at any time as one of heart failure, although he had treated him several times for slight or minor ailments. He also stated that his heart was on the wrong side of his body, but that fact was contradicted by other witnesses. It appears that Stamper had a brother, that the doctor had treated, whose heart was on the wrong side, and the doctor thought this was the one. The undertaker, who took charge and prepared the body for burial, in order to do so, had to use a spoon to get the clay out of his mouth and throat. He reached as far as he could down his throat and could not get it all out. It was in evidence that when a person died from heart failure, he would immediately cease breathing; therefore, no clay could have gotten into his mouth or throat, as it was found, unless he breathed and drew it in. Several physicians testified to that effect. The compensation board from this evidence concluded that the decedent met his death by suffocation by reason of his being covered with clay in the bin.

As was said in the case of Employers' Liability Assurance Corp. et al. v. Gardner et al., 204 Ky. 216, 263 S. W. 743, 744:

"Unless there is an entire absence of substantial and credible evidence to support the board's finding of facts, this court, in the absence of fraud, cannot disturb it. Andrews Steel Co. v. McDermott, 102 Ky. 679, 234 S. W. 275; Valentine v. Weaver, 191 Ky. 37, 228 S. W. 1036; Ames Body Corp. v. Vollman, 199 Ky. 358, 251 S. W. 170; Robinson-Pettet Co. v. Workmen's Compensation Board, etc., 201 Ky. 719, 258 S. W. 318."

See, also, Ajax Coal Company v. William Collins et al., 269 Ky. 222, —— S. W. (2d) ——, decided April 20, 1937.

We have come to the conclusion, after carefully

reading the record, that there is not an entire absence of substantial and credible evidence that his death was caused from suffocation.

Wherefore, the judgment is affirmed.