## Pope Mining Company v. Brown.

(Decided May 9, 1922.)

### Appeal from Crittenden Circuit Court.

1. Master and Servant—Workmen's Compensation Act—Burden of Proof.—Under the Workmen's Compensation Act, the burden of proving that the employe had accepted the provisions of the act is upon him, if such fact is denied.

2. Master and Servant—Workmen's Compensation Act—Notice of Acceptance.—Although the identification of the signature of the employe to the notice of his election to accept the provisions of the Workmen's Compensation Act, is made conclusive evidence of his acceptance, the employe is not precluded from proving that he accepted the provisions of the act in writing, as prescribed by the statute, by any other competent evidence, when the register containing the notice is lost, concealed, mislaid or mutilated.

3. Master and Servant—Workmen's Compensation Act—Notice of Acceptance.—It is the duty of the employer to keep and preserve the notice of acceptance by the employe of the provisions of the compensation act, but if the register containing the notices of acceptance is mutilated, that fact, alone, will not prove the signing of the notice by the employe, although its condition may make it valueless as evidence to disprove any other competent evidence, proving that the employe had subscribed the notice of acceptance.

4. Master and Servant—Workmen's Compensation Act—Acceptance of Provisions.—The statute prescribes the mode of acceptance of the provisions of the compensation act by both employer and employe, to be the signing by them of notices of acceptance.

O'NEAL & O'NEAL for appellant.

C. S. NUNN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

This is an appeal by an employer from a judgment of the circuit court, reversing the finding of the Workmen's Compensation Board and remanding the cause to the board with directions to make and enter an award in conformity with the judgment of the court. Thomas Brown, the husband of the appellee, Mrs. Willie Brown, was an employe of the Pope Mining Company and received wages in the sum of $24.50 per week. While engaged in his duties as an employe, he was accidentally injured, and his death resulted from the injury, within a few days. The accident which caused his death arose out of and in the course of the employment. His widow made application for compensation for herself and three minor children as dependents, under the Workmen's Compensation Act, but the board denied the compensation, upon the ground that the evidence failed to prove, that he had ever accepted the provisions of the compensation act, in writing. In due time, she presented a petition to the circuit court for a review of the action of the board, upon several grounds, but, seriously urged that it was unsound upon only one, and that was that the award was not based upon nor supported by the facts. As an incident of this ground of review, it was insisted, that the board erred upon a question of law, in determining that the burden of proving, that the employe had actually accepted the provisions of the compensation act, in the manner required by the statute, was upon the one seeking compensation, when in fact and in truth, under the circumstances presented in evidence, the presumption arose, that the employe had accepted in writing, and shifted the burden upon the employer to prove that the contrary was the fact.

The court decided that decedent had accepted the provisions of the compensation act, in the manner required by the statute, set aside the award of the board, and adjudged that the appellee was entitled to receive compensation in the sum of $4,000.00, payable at the rate of $12.00 per week, beginning at the death of the employe and remanded the cause to the board with directions to make an award in conformity to the judgment. From that judgment the employer has appealed.

The record shows and it is admitted, that the relationship of the employer and employe existed, between the

appellant and decedent; that appellant had elected to operate under the provisions of the Workmen's Compensation Act; that the decedent while in the course of employment incurred a personal injury by accident, which arose out of the employment and which caused his death; and that appellee and her three children were dependents of the decedent. Thus, but, one requisite to entitle the appellee to the compensation sought was the subject of dispute, and that was, whether the decedent had accepted the provisions of the compensation act. If he had not done so, such failure of course is fatal to the right of appellee to compensation. The award of the board, to the effect, that decedent had never accepted the provisions of the act, is the decision, which it is urged for appellee is not based upon nor supported by the facts.

Section 4957, Kentucky Statutes, which is section 74 of the Workmen's Compensation Act, provides:

"Election to operate under the provisions of this act shall be effected by the employe by signing the following notice, to-wit:

"I hereby agree with (name of employer) to accept the provisions of chapter (33), Acts of 1916, commonly known as the Kentucky Workmen's Compensation Act.

"The election shall be effective from and including the date of signing, which shall be inserted opposite the employe's signature. In case an employe be unable to write, his mark shall be witnessed by a third person, who shall at the time read the notice to the employe; any number of employes may sign the same notice, provided that there be conspicuously written or printed at the top of each page thereof on which signatures appear a copy of the above form of notice. If the employment be intermittent or temporarily suspended the original acceptance of the employe shall continue effective in subsequent employment under the same employer.

"Identification of such signature or mark of the employe shall constitute conclusive proof of his election to operate under the provisions of this act, in any hearing or proceeding in which such election may be material or in issue."

Section 4956, Kentucky Statutes, provides, that when an employer accepts the provisions of the act, he must do it in writing, and the writing must be signed by him.

It thus appears, that the statute has prescribed a specific mode for the acceptance of the provisions of the law, by both the employer and the employe. In each

instance, it requires their signatures to the notice required of that fact. It will be presumed, that this mode of acceptance is required, that there may be no uncertainty upon the subject, which would arise if an election was left to the uncertain recollections of witnesses and oftentimes the misunderstood declarations of the parties. Section 4958, Kentucky Statutes, requires the written evidence of the election of the employees to be preserved, under a penalty for their wilful destruction or secretion, erasure or obliteration. While section 4957, *supra,* provides that the "identification of such signature or mark of the employee shall constitute conclusive proof of his election to operate under the provisions of the act," it is not held that proof of the election of an employe, may not be shown by any other competent evidence, than exhibition of the signature where same can not be shown for any reason, but it seems that before an employe can be considered to have elected to accept the provisions of the act, it must be proven substantially that he made the election in writing by signing a declaration to that effect. McCune v. Pell & Bro., 192 Ky. 22; Green v. Caldwell. 170 Ky. 571; Hollenbach v. Hollenbach, 181 Ky. 262; Dosker, 83.

In the instant case, the notices of the election of the employees of appellant to accept the provisions of the act were contained in a book, with flexible backs, about eight inches in length and four and one-half inches in width. It contained ten leaves or twenty pages. At the top of each page, the requisite notice was printed and underneath the notice were twenty-five lines for the signatures of employes. On the second page were twenty-four signatures, on the fourth page were twenty-three, and on the sixth page were twenty-three, and on the eighth page were twelve. On the pages opposite the signatures, were the dates, when signed. On the remaining pages, there were no signatures. The tenth or last leaf is torn from the book. The signature of the defendant nowhere appears on this register. It is agreed that it is the register kept by the employer for the signatures of the employes to notices contained therein accepting the provisions of the act, during the time, that decedent was in the employment. The signatures of employes to the notices commence at the top of the second page and a signature is upon nearly every line, until upon the eighth page, the signatures cease. It was agreed that Raymond Babb,

who was the employer's superintendent, and Jas. Garnett, one of the employes, would testify that on May 1st, 1918, decedent and Garnett were working near the office of the employer, when Babb called to them to come and sign the notices of acceptance in the register, and Garnett went immediately and did so, and his signature appears accompanied by that date. The decedent answered that he would come and sign, as soon as he completed boring a hole in a log. Babb and Garnett went into the engine room, and Babb called to decedent, that he would leave the register upon the table, or else decedent said to Babb to leave it there and he would go there and sign it. The decedent was mortally injured on August 2, 1919. Thirty-two signatures appear on the register after May 1st, 1918. The book remained in the office of the employer, or about the place of business, and was never placed under lock, and although thirty-two employes signed it thereafter, no one ever saw the name of the decedent upon it anywhere. No one saw him sign, nor going to the place where the register was, nor in such proximity to it, or under circumstances from which it could be inferred, that he was signing or had signed it. There was evidence, without any objection to its competency, that decedent often urged other employees to sign the notice in the register, and said that he always "signed up." The register was at all times in the control of the employer, through Babb, its superintendent, and he never saw the name of decedent upon it. The statute makes it the duty of the employer to preserve the register so long as the employes, who sign it, are in his employment. It was admitted, that a witness would testify, that he had seen the register in a little box or cabinet in the engine room, and that he had seen boys reach into the box or cabinet and tear out pieces from papers or magazines in the cabinet, with which to light cigarettes, but, there was no evidence, that he had ever seen the register thus treated. No one pretended to know or to explain how the last leaf on the back side of the register came to be missing, and Babb deposed that he never observed it until after the death of decedent. The appellee would depose, that after decedent was injured he said to her, not to sign any papers nor to make any compromises, as the law fixed the sum she would receive, but, the competency of this declaration was assailed, and it was clearly incompetent as evidence. To entitle the dependents of one to compensation under the workmen's compensation

law and to change the relations which such a one bears to his employer under the common law, if the relationship created by the compensation act is denied, the party, who takes the affirmative of the issue, takes the burden of proving it. The principle must be the same as in case of one, who takes the affirmative of any other issue, unless it is otherwise provided by statute. 1 Greenleaf, section 74; Civil Code, sections 525 and 526. While the keeping of the notice of acceptance is the duty of the employer and the statute has not provided any writing to be held by the employe to prove the fact, that he has accepted in writing the provisions of the act, and while the employe would not be deprived of secondary proof of the signing by him, if the notice itself could not be produced, or if produced was mutilated, yet the employe would have to carry the burden of making proof, at least, of some character, that he had accepted the act, as provided in it. The fact must be established and the presumption of fact, which would arise from a mutilated register would assist in the determination of the fact of acceptance in writing, but the fact that the register was mutilated by the absence of a leaf would not be evidence to prove that decedent had ever signed an acceptance in it. The mutilation would probably destroy the value of the register as evidence to disprove any affirmative evidence, that he had signed the notice in it, but, it could not possibly amount to affirmative evidence that he had signed the notice. The improbability of the decedent having signed his name upon the last leaf of the register and not where the other employes had theretofore and thereafter placed their signatures, and the fact, that the register bore the date of the signatures of so many others, after the time, it must be presumed from the evidence, that decedent signed, and no one ever saw the name of decedent in the register, is evidence which goes to determine the fact of his acceptance, also. Whether or not the decedent declared his acceptance of the provisions of the act, in writing, by signing his name to the notice printed in the register seems to have been an issue of fact, and having been decided by the board without the application of any erroneous view of the law, must be considered as conclusive of the issue. In the absence of any evidence, that decedent ever signed the notice, and in the absence of the proof of any fact, from which it can be inferred, that he did so, it can not be held upon mere speculation that the award was not supported by the evidence.

The judgment appealed from must therefore be reversed, and cause remanded with directions to dismiss the petition.